**Garrett Brock TRAPNELL,
Plaintiff-Appellant,**

v.

**James D. RIGGSBY; Jerry Williford; Ronald Thompson; J. Brown and David Dalcher, Defendants-Appellees.**

No. 79–1856.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 14, 1980.

Decided May 27, 1980.

Rehearing and Rehearing In Banc Denied Aug. 29, 1980.

Larry Nyhan, Law Student; Allen E. Shoenberger, Chicago, Ill., for plaintiff-appellant.

Theodore J. MacDonald, Asst. U. S. Atty., East St. Louis, Ill., for defendants-appellees.

Before CASTLE, Senior Circuit Judge, and PELL and SPRECHER, Circuit Judges.

CASTLE, Senior Circuit Judge.

Plaintiff-appellant Trapnell, an inmate at the federal prison in Marion, Illinois filed this suit seeking both injunctive and monetary relief for infringement of his rights under the First Amendment. The defendants-appellees are officials and employees at the prison. The district court submitted the matter to a magistrate for evidentiary hearings and proposed findings, and subsequently adopted the magistrate's recommendation that Trapnell's requests for relief be denied. Trapnell appeals the decision of the district court. There are two issues presented for review: (1) whether the current prison regulations governing prisoner receipt of photographs of nude and semi-nude women are constitutionally valid; and (2) whether Trapnell is entitled to damages for official acts taken pursuant to earlier guidelines governing the receipt of photographs. We hold that the current standards are valid and that Trapnell is not entitled to any monetary relief. Accordingly, we affirm the decision of the district court.

I.

Trapnell currently is an inmate at Marion and has been there since 1975. He has studied art during his imprisonment and spends part of his free "cell" time painting. The inmates at Marion are, generally, sentenced to long terms of imprisonment and are considered assaultive in nature. During the period prior to January 18, 1978 the prison's mail regulations stated that "[p]hotographs should meet the standard of decency and must include the individual's name on the back of the photograph." Policy Statement MI 7300.1, dated April 1, 1976, Part 3(e); Policy Statement MI 7300.-1A, dated February 1, 1977, Part 3(e). Trapnell's claims for monetary relief are based on the rejection, under this regulation, of three sets of photographs. Two of these sets, rejected by officials in October and November of 1976, depicted female acquaintances of Trapnell. The subjects in the rejected photos were nude and semi-nude. The final group of photographs upon which this suit is based, the only commercially released photos rejected by Marion officials, were ordered by Trapnell from Peter Gowland. All of the photographs ordered from Gowland, who is a commercial photographer, were contained in catalogues which Trapnell received from Gowland. The catalogues included photos of nude and semi-nude women and were sent to Trapnell pursuant to an inquiry about "figure

studies." Trapnell was allowed to receive the catalogues; the regulation in question was limited to photographs. Trapnell selected and ordered thirty-six photographs from the catalogues, sending $88.80 with the order. In November, 1976 the photos were sent to the prison and rejected. There were no marks or stamps affixed to the Gowland photos to demonstrate that they indeed had been commercially published and distributed. Trapnell filed this suit in May, 1977 following denial of his requests for administrative relief.

During the course of this litigation the prison has promulgated new guidelines governing the receipt of the photographs. The parties have agreed that the claims for injunctive and declaratory relief contained in Trapnell's complaint will apply to the new guidelines, which are still in effect. We will review the earlier regulations only as they relate to Trapnell's claims for damages.

## II.

We will first review the validity of the standards now in use at Marion. The current standards, in contrast to the regulations under which the photographs were initially rejected, set out carefully written and objective guidelines governing the receipt of photographs. The new regulation, MI 7300.1B(f) provides:

f. Nude and Pornographic Photographs.

(1) Nude photographs are defined as any photograph exposing the nipples of the breasts, buttocks, pubic hair and genitalia of a female and buttocks, pubic hair and genitalia of a male. This includes exposure through "see through" materials.

(2) Pornographic photographs are defined as photographs depicting acts of fornication, felattio [sic] and/or sodomy.

Inmates will not be allowed to receive or have in their possession photographs as described above *unless* the photographs are received as a part of a publication approved under the provisions of Bureau of Prisons Policy Statement 7300.42D, and/or the photographs have been *published* for commercial use (postcards, etc.). Such photographs must have some identifying marking or publication label to distinguish them as published for commercial use.

The distinction between photographs *published* for commercial use and *original* photographs intended for individual viewing must be made to maintain the security and orderly running of the institution consistent with the Bureau of Prisons mandate to provide for the safekeeping of the inmate population. Those persons who pose for photographs to be published for commercial use are aware that viewing of such photographs will be widespread; whereas persons who pose for original photographs may be doing so only for select viewers, such as inmate wives and girlfriends posing for one particular inmate. These types of intimate photographs are considered highly emotionally charged items for an inmate to have in his possession. If such photographs were viewed by other inmates, conflicts or assaults are likely to result. Unfortunately, even in the most secure prison setting, intentional or inadvertent viewing of such photographs cannot be prevented. Since this population is primarily long-term offenders with assaultive patterns of behavior and considered to have a high propensity toward violence, regulations must be established in this area for the safekeeping of both staff and inmates.

Inmates will not be able to receive or have in their possession photographs which depict sadistic acts, homosexual acts, beastiality, [sic] and sexual acts with children, regardless if the photograph has been published for commercial use or not. This regulation is needed as these types of photographs tend to increase anxiety, aggression and sexual arousal, thus threatening the orderly running of the institution.[1]

---

1. Of additional assistance in evaluating the validity of these guidelines is the Government's explanation of what sort of "identifying mark

■ We hold that the current regulations of Marion are constitutionally acceptable. The policy "furthers one or more of the substantial governmental interests of security, order, and rehabilitation." *Procunier v. Martinez*, 416 U.S. 396, 413, 94 S.Ct. 1800, 1811, 40 L.Ed.2d 224 (1974). The officials have adequately demonstrated that the regulations further the substantial interests of security and order. The defendants proved, to the satisfaction of the magistrate in the proceedings below, that "the propensity for violence is increased by the possession of such photos." Magistrate's Report and Recommendations at 6. This conclusion is supported by the "highly emotionally charged" nature of the photographs and the assaultive background of Marion's inmates. *Id.* Prison officials must be allowed "[s]ome latitude in anticipating the probable consequences of allowing certain speech in a prison environment." *Procunier v. Martinez*, 416 U.S. at 414, 94 S.Ct. at 1812. We note the Supreme Court's admonition that "[r]esponsible prison officials must be permitted to take reasonable steps to forestall such a threat [of violent confrontation], and they must be permitted to act before the time when they can compile a dossier on the eve of a riot." *Jones v. North Carolina Prisoners' Union*, 433 U.S. 119, 132–33, 97 S.Ct. 2532, 2541, 53 L.Ed.2d 629 (case involving First Amendment associational rights).

Moreover, the governmental interest furthered here is not an attempt "to eliminate unflattering or unwelcome opinions." *Procunier v. Martinez*, 416 U.S. at 413, 94 S.Ct. at 1811. Although the regulations are related to the content of the photos, the prison is not attempting to take a moral stance on the propriety of pictures of nude and semi-nude women. The prison is, in fact, unconcerned with whether the prisoners have or obtain photos of nude and semi-nude women. Such materials are sold at the prison commissary, are shown to the prisoners in the form of sexually explicit

films, and can be sent to prisoners in the form of commercially released photographs. Indeed, the prison's Chief of Classification and Parole testified that if a prisoner's wife were to have a picture commercially released and published, the published photographs would be acceptable under the regulation. Transcript of Hearing Before Magistrate at 39. Rather than attempt to suppress expression *per se*, the regulation is an attempt to diminish the possibility that, when certain photos are in the possession of inmates, those photos will be the cause of violence between the inmates. We note that each of the photographs that Trapnell ordered from Gowland was selected from Gowland's catalogues, which catalogues Trapnell was allowed to receive through the prison mail system.

Finally, the regulation is sufficiently narrow in scope and is "no greater than is necessary or essential to the protection of the particular governmental interest involved." *Procunier v. Martinez*, 416 U.S. at 413, 94 S.Ct. at 1811. Under these regulations prison officials are not entitled "to apply their own personal prejudices and opinions as standards for prisoner mail censorship." *Id.* at 415, 94 S.Ct. at 1812. Instead, these regulations are a narrowly drawn and carefully limited response to a valid security problem faced by officials. The distinction between photographs which have been released for commercial distribution and those photos which have not been so released is a reasonable attempt to exclude photographs of women with whom inmates have an emotional attachment. Nor do the labeling requirements impose an impermissible burden on commercially released photos. *See, e. g., Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974) (regulation requiring letters from inmates' attorneys to be marked as coming from attorneys was "entirely appropriate" if such correspondence was to receive special treatment, 418 U.S. at 574–77, 94 S.Ct.

---

or publication label" is required. During oral arguments before this Court, counsel for the Government maintained that the current policy did not require a particular type of stamp or label. Instead, the regulations merely seek to

have photographs "stamped to somehow differentiate . . . [between photographs of] the people that didn't want [the photos] disseminated . . . [from] those that didn't care."

at 2983–85). In view of the limited goal and scope of these regulations and, "in the absence of prohibitions far more sweeping than those involved here," *Bell v. Wolfish*, 441 U.S. 520, 551, 99 S.Ct. 1861, 1880, 60 L.Ed.2d 447 (1979), we conclude that these regulations are "reasonable 'time, place and manner' regulations . . . necessary to further significant governmental interests, and are permitted." *Grayned v. City of Rockford*, 408 U.S. 104, 115, 92 S.Ct. 2294, 2303, 33 L.Ed.2d 222 (1972) (citations omitted), *quoted in Bell v. Wolfish*, 441 U.S. at 552, 99 S.Ct. at 1881.

### III.

■ Trapnell also challenges the conclusion, reached by both the magistrate and the district court, that he is not entitled to damages for the defendants' actions under the earlier standard. Trapnell seeks $1,000,000. in compensatory damages; this amount includes the $88.80 paid for the rejected Gowland photographs. The magistrate determined that although the prior policy was overly broad, it was implemented in good faith and that under *Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974) the defendants were entitled to immunity from liability. The magistrate also concluded that Trapnell had not demonstrated that the named defendants were personally responsible for any constitutional violations which may have occurred under the earlier standard. In light of our agreement with the decision on the issue of immunity, we find it unnecessary to decide whether Trapnell adequately demonstrated the responsibility of the named defendants.

An initial question involves the basis of Trapnell's claim for damages. The *pro se* complaint based this claim upon both the First Amendment and the Civil Rights Acts, 42 U.S.C. § 1981 *et seq.* However, Trapnell has neither alleged nor proved any facts that would bring this suit within the scope of the Civil Rights Act: there have been no claims that Trapnell was discriminated against due to his race, that any of the defendants have acted under color of state law, or that there has been a conspir-

acy within the meaning of 42 U.S.C. § 1985 against Trapnell. Accordingly, Trapnell cannot bring his suit under the Civil Rights Acts. *Walker v. Blackwell*, 360 F.2d 66, 67 (5th Cir. 1966); *Mead v. Parker*, 464 F.2d 1108, 1111 (9th Cir. 1972).

This is not to say that Trapnell is without a cause of action. The Supreme Court, in *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 338, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), held that there is a cause of action for damages for a violation of Fourth Amendment rights by federal agents. Several courts of appeals, applying *Bivens*, have held that a violation of First Amendment rights by federal officials gives rise to a cause of action for damages. *Dellums v. Powell*, 566 F.2d 167, 194–95 (D.C.Cir.1977), *cert. denied*, 438 U.S. 916, 98 S.Ct. 3147, 57 L.Ed.2d 1161, *rehearing denied*, 439 U.S. 886, 99 S.Ct. 234, 58 L.Ed.2d 201 (1978); *Paton v. LaPrade*, 524 F.2d 862, 869–71 (2d Cir. 1975); *Yiamouyiannis v. Chemical Abstracts Service*, 521 F.2d 1392, 1393 (6th Cir. 1975) (per curiam). Accordingly, we will entertain Trapnell's suit as one brought directly under the First Amendment.

### IV.

■ Trapnell's initial argument on the issue of immunity is that the defendants failed to plead official immunity as a defense and cannot now raise the issue. However, there was evidence presented before the magistrate which went to the defendants' good faith and to the issue of official immunity. Additionally, Trapnell's objection to the magistrate's report discussed the magistrate's finding of immunity. We will therefore consider the issue of immunity as having been tried by the implied consent of the parties. F.R.Civ.P. 15(b); *Bradford Audio Corp. v. Pious*, 392 F.2d 67, 73–74 (2d Cir. 1968). *See also Federal Savings & Loan Ins. Corp. v. Hogan*, 476 F.2d 1182 (7th Cir. 1973); *Wagner v. United States*, 573 F.2d 447, 452 (7th Cir. 1978).

■ Trapnell's next claim is that the defendants lacked the good faith necessary for official immunity to be granted. The

standard to determine whether a government official is entitled to a limited good-faith immunity is the same for both federal and state officials, *Butz v. Economou*, 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978), and requires that officials act with both "subjective" and "objective" good faith. *Wood v. Strickland*, 420 U.S. 308, 321, 95 S.Ct. 992, 1000, 43 L.Ed.2d 214 (1975). Thus, in *Wood* the Court held that:

a school board member is not immune from liability for damages under § 1983 if he knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of the student affected, or if he took the action with malicious intention to cause a deprivation of constitutional rights or other injury to the student.

*Id.* at 322, 95 S.Ct. at 1001.

This rationale was applied to prison officials in *Procunier v. Navarette*, 434 U.S. 555, 98 S.Ct. 855, 55 L.Ed.2d 24 (1978), where the Court stated that:

Under the first part of the *Wood v. Strickland* rule, the immunity defense would be unavailing to petitioners if the constitutional right allegedly infringed by them was clearly established at the time of their challenged conduct, if they knew or should have known of that right, and if they knew or should have known that their conduct violated the constitutional norm.

*Id.* at 562, 98 S.Ct. at 860. Since Trapnell does not challenge the magistrate's finding that the defendants acted with subjective good faith, the issue presented is whether the defendants acted "with such disregard of . . . [the plaintiff's] clearly established constitutional rights that [their] action cannot reasonably be characterized as being in good faith." *Wood v. Strickland*, 420 U.S. at 322, 95 S.Ct. at 1001.

Trapnell contends that under *Aikens v. Jenkins*, 534 F.2d 751 (7th Cir. 1976),[2] Marion's earlier guidelines governing the receipt of photographs were clearly illegal. *Aikens* was decided in April, 1976 and Trapnell's photographs were rejected in October and November of 1976. Therefore, according to Trapnell, the officials knew or should have known that the censorship of the photos was in clear disregard of Trapnell's established constitutional rights and the defendants are not entitled to immunity.

The regulation reviewed in *Aikens* provided, *inter alia*, that:

Periodicals of a sexual nature or which contain sexually-oriented material which, when taken as a whole, appear to be designed primarily to arouse sexual drives, cultivate sensual perception to sell or gain reader interest, or otherwise tend to appeal to the effective [*sic*] prurient interest in sex, are not approved. *Photographs or paintings of nudes in a publication do not, per se, preclude the publication from being permitted in the institution, if the photos or paintings are supportive or incidental to a theme not designed primarily to arouse sexual drives.*

534 F.2d at 756 (italics added in *Aikens* opinion). In striking down the italicized portion of the regulation, the court held that the stricken provision prohibited far more than was necessary for the protection of any substantial governmental interests. The court discussed the range of materials already prohibited under the first sentence of the regulation, which the plaintiffs did not challenge. The court also noted that the state could "deny prisoners access to materials that are not obscene, if it can establish that doing so furthers a governmental interest protectible under *Procunier v. Martinez*." *Id.* at 756, n.4.

■ *Aikens* does not demonstrate that Trapnell had a "clearly established" right to the photos involved in this case. The *Ai-*

**2.** Trapnell also relies on *Procunier v. Martinez*, 416 U.S. 396, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974) and *Guajardo v. Estelle*, 580 F.2d 748 (5th Cir. 1978) to demonstrate that the defendants acted in disregard of clearly established rights. *Procunier*, although an extremely important case regarding censorship of prisoner correspondence, does not necessarily establish that Trapnell had a constitutional right to receive the rejected photos. Nor does *Guajardo*, which was decided over a year after Trapnell filed his suit, support Trapnell's claims.

*kens* court's willingness to allow prison officials to prohibit non-obscene materials demonstrates that a regulation comparable to the earlier Marion guidelines could, under certain circumstances, be constitutionally acceptable. *See* Part II, *supra*. Although Marion's earlier guidelines were inartfully drawn, Trapnell has not demonstrated that the rejection of the photographs violated any of his clearly established constitutional rights. Nor does the fact that the defendants acted pursuant to the regulations' broad grant of discretion alter this conclusion. The unchallenged portion of the guidelines in *Aikens* endowed officials with discretion to decide whether materials appeared to have been "designed primarily to arouse sexual drives" or tended "to appeal to the effective [*sic*] prurient interest in sex." 534 F.2d at 756. Additionally, the regulations reviewed in *Aikens* had never been subjected to a narrowing interpretation or construction by the relevant officials and the court was in the "peculiar position" of reviewing the regulations only as written. *Id.* at 753. In the present case it appears that Marion's earlier regulations were consistently construed as restrictions upon the ability of prisoners to receive photos of nude and semi-nude personal acquaintances.[3] Thus, the decision in *Aikens* is an insufficient basis for ruling that the defendants are not entitled to a limited immunity for their actions pursuant to Marion's earlier guidelines.

■ We are aware of, and repeat, the admonition set forth in *Little v. Walker*, 552 F.2d 193 (7th Cir. 1977), *cert. denied*, 435 U.S. 932, 98 S.Ct. 1507, 55 L.Ed.2d 530 (1978). Prison officials "cannot hide behind a claim that the particular factual predicate in question has never appeared *in haec ver-*

*ba* in a reported opinion. If the application of settled principles in this factual tableau would inexorably lead to a conclusion of unconstitutionality, a prison official may not take solace in ostrichism." 552 F.2d at 197. In the present case we believe that the defendants, in good faith, applied regulations which were, in various ways, different than the regulations struck down in *Aikens*. Accordingly, the defendants are entitled to immunity from liability.

For these reasons, the decision of the district court is

AFFIRMED.

---

3. In an affidavit given by defendant Williford soon after the filing of this lawsuit (while the earlier guidelines were still in effect), Williford considered the guidelines to be limitations on the receipt of photos of nude and semi-nude friends and wives. Additionally, Trapnell testified before the magistrate that after the Gowland photographs were rejected, he complained to defendant Thompson and to a Lt. Shields. The reply from both officials was that they were unable to determine if the women depict-

ed in the photos were personal friends of Trapnell and, accordingly, the photos were rejected. Transcript of Hearing at 13. Indeed, Trapnell's complaint anticipated that the defendants would raise this narrowing interpretation of the regulations as a defense. Paragraph 14 of Trapnell's complaint stated that the regulations under attack "do not prohibit specifically or by inference the mailing and receiving of semi-nude photographs from family and friends."