960 F.2d 143
 NOTICE: First Circuit Local Rule 36.2(b)6 states unpublished opinions may be cited only in related cases.
Lawrence FURROW, Plaintiff, Appellant,
v.
Martin MAGNUSSON, etc., et al., Defendants, Appellees.
 No. 91-1585.
 United States Court of Appeals,
First Circuit.
 April 10, 1992
 
 Lawrence Furrow on brief pro se.
 Michael E. Carpenter, Attorney General, and Terrance J. Brennan, Assistant Attorney General, on brief for appellees.
 Before Torruella, Circuit Judge, Campbell, Senior Circuit Judge, and Selya, Circuit Judge.
 Per Curiam.
 
 
 1
 Plaintiff-appellant Lawrence Furrow, an inmate at Maine State Prison ("MSP"), filed a 42 U.S.C. § 1983 action in the District of Maine on August 3, 1990. Furrow alleged that his constitutional rights were violated (1) by the suspension of his visitation privileges with his girlfriend, Linda Wasson, after prison authorities discovered photographs of Furrow and Wasson, depicting partial nudity, that had been taken in the Annex visiting room during a visit by Wasson in violation of prison regulations; and (2) by prison authorities' seizure of a photo album containing seventy-three of these photographs. Furrow specifically alleged violations of fourteenth amendment due process and equal protection, first amendment freedom of speech, the fourth amendment protection against unreasonable seizures, and the eighth amendment prohibition of cruel and unusual punishment. Furrow also raised pendent state-law claims.
 
 
 2
 On March 29, 1991, Furrow filed a motion for partial summary judgment accompanied by affidavits and a statement of material facts. On April 16, 1991, defendants filed an objection and a cross-motion for summary judgment. Their cross-motion was accompanied by a statement of material facts which entirely adopted Furrow's statement, adding only that the seized photographs showed partial nudity and touching. The district court granted defendants' cross-motion for summary judgment on May 31, 1991. The district court entered judgment for defendants on Furrow's federal claims and dismissed Furrow's state-law claims without prejudice.
 
 
 3
 We affirm, for the reasons stated by the district court in its May 31, 1991 memorandum of decision and order, the district court's grant of summary judgment for defendants on Furrow's due process claim based on the suspension of visitation rights. The due process clause does not independently guarantee an inmate any visitation rights. Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 460 (1989). Moreover, for the reasons the district court stated, none of the Maine statutes or regulations invoked by Furrow create a liberty interest in visitation privileges because none of them satisfy the twin requirements of (1) substantive predicates to govern official decisionmaking and (2) outcomes mandated upon meeting these substantive criteria. Id. at 462.
 
 
 4
 Furrow also raised a number of other claims that the district court did not address in its opinion. Furrow alleged that the suspension of his visitation privileges and/or the confiscation of his photographs violated his right of free speech under the first amendment, the prohibition of unreasonable searches and seizures under the fourth amendment, the prohibition of cruel and unusual punishment under the eighth amendment, and the equal protection clause of the fourteenth amendment.
 
 
 5
 These claims all are insubstantial. A prison inmate's constitutional rights may be restricted if the restriction reasonably furthers the prison's "legitimate penological interests" of security, order, and rehabilitation. Turner v. Safley, 482 U.S. 78, 89 (1987). Accordingly, courts have upheld prison regulations curtailing inmates' right to possess intimate photographs of loved ones where the government demonstrated that legitimate penological interests were reasonably served thereby. See, e.g., Trapnell v. Riggsby, 622 F.2d 290, 292-94 (7th Cir. 1980) (finding restriction justified by need to prevent violent altercations among prisoners caused by these emotionally charged photographs); Thomas v. Scully, 1990 U.S. Dist. Lexis 17084 (S.D.N.Y. 1990), aff'd w/o opin., 946 F.2d 882 (2nd Cir. 1991) (same). But see Pepperling v. Crist, 678 F.2d 787, 790-91 (9th Cir. 1982) (striking down similar restriction, under stricter pre-Turner test, after finding less restrictive alternative of barring inmates from publicly displaying these photographs). In the instant case, there is no dispute that the seized photographs were obtained in violation of valid prison rules, which bar excessive physical contact and physical displays which could be offensive to others during visits. The confiscation of the photographs reasonably served the prison's interest in ensuring that its rules are observed. Thus, the first amendment poses no bar to the prison's confiscation of the photographs.
 
 
 6
 It is well-settled that a prisoner does not enjoy a right of privacy in the prisoner's cell sufficient to confer fourth amendment protection against confiscation without a warrant of the prisoner's personal property. Hudson v. Palmer, 468 U.S. 517, 522-30 (1984).
 
 
 7
 Prisoner grievances involving visitation privileges and confiscation of photographs obviously are not nearly weighty enough to implicate the eighth amendment's ban on cruel and unusual punishment.
 
 
 8
 Finally, Furrow's complaint was inadequate to state a claim of denial of equal protection. Furrow alleged that another prisoner who had been charged with similar violations of prison rules governing the Annex visiting room suffered suspension of visitation privileges for a shorter period than Furrow, and suffered confiscation of his photo album for a shorter period than Furrow. Furrow alleged no facts, however, to suggest that he was discriminated against on account of membership in a suspect class, or that any difference in treatment was wholly arbitrary and irrational.
 
 
 9
 The only remaining federal issue is whether Furrow was accorded due process in connection with the seizure of Furrow's photographs. The facts of this matter, which are essentially undisputed between the parties, are briefly these. In February 1989, a prison guard discovered that Furrow's photo album contained photographs showing Furrow's girlfriend, Wasson, partially nude. It was evident from the photographs that they had been taken in the Annex visiting room at MSP. Defendant-appellee Stephen Mahoney, a captain in the prison guard unit, became aware of these photographs only several months later, on July 6, 1989. He immediately ordered that Furrow's photo album be confiscated.
 
 
 10
 Defendants assert, without contradiction by Furrow, that Mahoney deemed the photos containing partial nudity to be seizable as contraband not because of their ribald content, but solely because they had been taken in the Annex visiting room, where such physical displays during visits are forbidden by prison rules. Furrow does not dispute that these photographs were obtained in violation of prison rules.
 
 
 11
 Over six months later, on January 27, 1990, Furrow's photo album was returned to him, but only after seventy-three photographs which had been taken in the Annex visiting room had been removed as contraband. On April 12, 1990, these contraband photographs were returned to Wasson.
 
 
 12
 In Hudson v. Palmer, 468 U.S. 517 (1984), and Parratt v. Taylor, 451 U.S. 527 (1981), the Supreme Court ruled that "where a loss of property is occasioned by a random, unauthorized act by a state employee, rather than by an established state procedure, the state cannot predict when the loss will occur," Hudson, supra, 468 U.S. at 532, and postdeprivation process is sufficient. On the other hand, "postdeprivation remedies do not satisfy due process where a deprivation of property is caused by conduct pursuant to established state procedure, rather than random and unauthorized action." Id. In addition, "the necessity of quick action by the State ..., when coupled with the availability of some meaningful means by which to assess the propriety of the State's action at some time after the initial taking, can satisfy the requirements of procedural due process." Parratt, supra, 451 U.S. at 539.
 
 
 13
 Defendants acknowledge in their brief on appeal that "the album containing contraband photographs was seized pursuant to an established state procedure, which is that contraband is removed from a prisoner's possession when it is recognized as such." Given this concession, the postdeprivation remedy that Furrow received in this case-eventual return of his photo album, and of the seventy-three contraband photographs to Wasson-can satisfy the requirements of due process under Hudson and Parratt only if "the necessity of quick action" justified bypassing any predeprivation process. The district court ruled that it did, stating, "Prison officials could reasonably consider these intimate photographs contraband and, therefore, seize them without a prior hearing."
 
 
 14
 This conclusion appears to rest on the underlying assumption that once an item of property is reasonably deemed to be "contraband," a necessity for quick action automatically justifies its immediate seizure without a predeprivation hearing. Defendants have offered no specific reason, in either the district court or this court, to explain why swift action was necessary, beyond the fact that the photographs were contraband because obtained in violation of prison rules. Defendants have cited no authority to the effect that this fact alone ipso facto creates a necessity for quick action. The cases which have found an exception to the Hudson rule on grounds of the need for quick action have involved situations where that need was apparent, such as seizure of harmful drugs, tainted food, or assets of a mismanaged bank. See, e.g., Begg v. Moffitt, 555 F.Supp. 1344, 1350-51 n.23 (N.D. Ill. 1983), and cases cited therein. Of course, there can be no quarrel with the urgent need for quick action to seize the common varieties of contraband, such as drugs or potential weapons. It is at least conceivable, however, that Furrow's ribald photographs could represent a form of contraband whose brief continued possession by an inmate pending predeprivation process does not pose any significant threat to prison safety, order, and security.
 
 
 15
 On the other hand, one could argue that quick action is indeed always necessary to seize any form of contraband because of the serious risk that once an inmate has been alerted by predeprivation process to the imminent prospect of seizure, the inmate will simply hide or dispose of the contraband .
 
 
 16
 There is precedent, too, to suggest that quick action may be needed to seize intimate photographs of loved ones because such photographs are highly emotionally charged, posing a threat of violent altercations if they are viewed by other prisoners. See, e.g., Trapnell, supra, 622 F.2d at 292-94. In this case, however, defendants have expressly declined to rely on the intimate nature of the photographs to justify their seizure without a prior hearing. Instead, defendants acknowledge in their brief "that MSP inmates are allowed to possess photographs of loved ones, and that on occasion these photographs are to some degree sexually explicit.... [T]he photographs were not declared contraband due to their content, but rather because they resulted from activity during a visit which was not only inappropriate but in violation of MSP visitation policy."
 
 
 17
 We need not tarry further with these musings. Even if we were to conclude that predeprivation process was required here-an issue we do not reach-we would nevertheless affirm the district court's grant of summary judgment because the record leaves no doubt that there would be no remedy available to Furrow. See Helvering v. Gowran, 302 U.S. 238, 242 (1937) (court of appeals can affirm on any ground presented by the record).
 
 
 18
 There is no basis for the injunctive and declaratory relief sought by Furrow. The photo album has been returned to him, the contraband photographs to Wasson. Thus, there is nothing for a court to order. Furrow has set forth no evidence of any cognizable future danger that his photo album may again be seized.
 
 
 19
 Furrow does also claim money damages, but we are satisfied on this record that defendants have set forth adequate evidence to demonstrate that they enjoy a defense of qualified immunity to that claim. Qualified immunity protects public employees who perform discretionary functions from liability for civil damages where "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The appropriate inquiry here, therefore, is whether, in light of the law as it existed in July 1989 when Furrow's photo album was seized, the unlawfulness of a seizure without any predeprivation process should reasonably have been apparent to defendants.
 
 
 20
 As we have discussed above, it is a debatable question whether or not the due process clause required predeprivation process here. There are, at the very least, substantial arguments that it did not. There is a dearth of case law on point. If the matter is not readily apparent to this court at this time, clearly it would not have been apparent to a reasonable prison official in July 1989 that the due process clause would preclude the procedure followed in this case. We rule, therefore, that defendants enjoy qualified immunity from damages liability.
 
 
 21
 Although defendants did not mention qualified immunity in support of their cross-motion for summary judgment (they did plead it as an affirmative defense in their answer), this court has discretion to affirm on that basis even though the issue was not reached in the lower court. Knight v. Mills, 836 F.2d 659, 664 n.6 (1st Cir. 1987); Mims v. Board of Education, 523 F.2d 711, 716 n.2 (7th Cir. 1975). Defendants did argue in the district court that due process required no more than a postdeprivation remedy. This argument was sufficient to put Furrow on notice of the implicit contention that the contrary was not clearly established law as of July 1989.
 
 
 22
 In view of our decision to affirm the district court's judgment on the basis of qualified immunity, we reject Furrow's contention that the district court erred in denying Furrow's motion for a continuance of the summary judgment determination so that Furrow could obtain certain discovery materials from defendants. Furrow sought copies of various prison policies and procedures, which he said would help him prove that defendants had violated their own procedures. These materials could have had no relevance to defendants' qualified immunity defense.
 
 
 23
 For similar reasons, we reject Furrow's claim that the district court erred in accepting the affidavit of Stephen Mahoney because Furrow had no time to respond to it. Furrow objects in his brief on appeal that the affidavit's statement that the contraband photographs showed "touching" was unfounded. Furrow did not dispute in the district court, however, that these photographs showed partial nudity and were obtained in violation of prison rules. Thus, even if we were to disregard Mahoney's affidavit, our affirmance on the basis of qualified immunity would remain unaffected.
 
 
 24
 Given our affirmance of the grant of summary judgment for defendants on all of Furrow's federal claims, the district court acted well within its discretion in dismissing without prejudice Furrow's pendent state-law claims. United Mine Workers v. Gibbs, 383 U.S. 715 (1966).
 
 
 25
 The judgment of the district court is affirmed.