977 F.2d 585
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Johnny SMITH, Plaintiff-Appellant,
v.
Marjorie DONOHUE, Michael W. Carter, Felissa M. Newberry, et
al., Defendants-Appellees.
 No. 91-1647.
 United States Court of Appeals, Seventh Circuit.
 Submitted Sept. 21, 1992.*
Decided Sept. 24, 1992.
 
 Before CUMMINGS, POSNER and MANION, Circuit Judges.
 
 ORDER
 
 1
 Insisting that the Pontiac Correctional Center "is a prison not a church," Johnny Smith claims that prison authorities wrongly confiscated two pornographic magazines that he ordered through the mail. To vindicate his constitutional rights, Smith filed suit in federal district court under 42 U.S.C. § 1983. The district court granted summary judgment in favor of the defendants. In addition to challenging the merits of the district court's decision, Smith raises several objections to the district court's procedures. As discussed below, we reject Smith's procedural objections. On the merits, we affirm for the reasons stated in the attached district court order.[1]
 
 
 2
 Smith, an inmate at the Pontiac Correctional Center, sought to buy two sexually explicit magazines through the mail. The gist of Smith's complaint is that prison officials authorized the purchase while knowing the sexually explicit nature of the magazines, but then decided to review them upon their arrival at Pontiac. Without allowing Smith to testify or present evidence, two review committees concluded that the magazines were obscene. Each denied Smith's request to allow the magazines into the prison. For further details regarding the underlying facts of Smith's substantive claim, we rely on the attached order of the district court.
 
 
 3
 On February 5, 1990, Smith filed an amended complaint, naming as defendants members of the Central Publication Review Committee, one of the committees that denied Smith's request for the magazines. The complaint alleged violations of his First Amendment rights "to free speech and [freedom] from censorship of opinions and ideas," and his Fourteenth Amendment right to due process of law. Smith then launched a barrage of motions. After the defendants failed to answer a set of interrogatories and a request for admissions of facts, Smith filed, on June 27, 1990, a motion for entry of default and a motion for default judgment. In the next several months, Smith twice repeated these motions. The defendants did not respond, but the court did not act on Smith's motions. Smith also propounded on August 15 a new request for admissions of facts. Finally, on November 13, Smith filed a motion for summary judgment.
 
 
 4
 On January 18, 1991, the district court ordered the defendants to respond to all outstanding motions and to show cause as to why judgment should not be entered against them. On February 1, the defendants provided a response in which "[c]ounsel for the defendant[s] recognize[d] that he should have responded to these frivolous motions earlier ... but did not do so, due to his caseload." At the same time, the defendants also filed a cross-motion for summary judgment. The district court notified Smith that he had 14 days in which to respond to the defendants' motion for summary judgment. However, after 13 days and before Smith filed any response, the district court ruled on the outstanding motions, denying all of Smith's and granting the defendants' motion for summary judgment.
 
 
 5
 Smith moved for relief from judgment under Fed.R.Civ.P. 60(b)(1), pointing out that the district court ruled before the expiration of the 14 days allotted for Smith's response. On February 27, while this motion was pending, Smith also filed a response to the defendants' cross-motion for summary judgment. The district court denied Smith's Rule 60(b)(1) motion and refused to disturb its decision granting defendants summary judgment. Smith filed a timely notice of appeal.
 
 
 6
 Smith first argues that the district court erred by failing to grant his repeated default motions, which he based on the defendants' failure to comply with discovery. The defendants reply that entry of default is a harsh sanction that should be used as a last resort.
 
 
 7
 We will defer to the district court's decision in matters such as this unless we find that it abused its discretion. United States v. DiMucci, 879 F.2d 1488, 1494 (7th Cir.1989). Although the district court may have been justified if it had decided to grant Smith's motion for default, we cannot say that the court abused its discretion in deciding the other way. We have affirmed the denial of a motion for default under more egregious circumstances. See Duling v. Markun, 231 F.2d 833 (7th Cir.), cert. denied, 352 U.S. 870 (1956).
 
 
 8
 Smith also contends that the district court erred by allowing the defendants to respond to his summary judgment motion and his default motions long after these motions had been filed. As for Smith's default motions, we have already indicated that the district court did not abuse its discretion in denying them. We therefore find that any error in allowing the defendants to respond was harmless. See Fed.R.Civ.P. 61. As for Smith's motion for summary judgment, we agree with the district court's disposition of that motion. So there too any error in allowing the defendants to respond to Smith's summary judgment motion was harmless under Rule 61.
 
 
 9
 Next, Smith challenges the district court's ruling on the defendants' cross-motion for summary judgment before the end of the 14 days allotted for his response. The defendants concede that a party opposing a motion for summary judgment should ordinarily be given an opportunity to respond. However, they point out that Smith filed a motion for relief from judgment and a response to the defendants' cross-motion for summary judgment. The district court subsequently denied Smith's motion for relief from judgment. The defendants argue that the district court considered the substance of Smith's opposition to the defendants' cross-motion for summary judgment, and thus any error in its initial ruling on February 13 was harmless. We agree.
 
 
 10
 Smith does not deny that the district court considered his response to the defendants' cross-motion for summary judgment when it entertained his motion for relief from judgment. Nor does he allege any prejudice resulting from this subsequent consideration. Although we have previously indicated that some opportunity to respond must be allowed regardless of prejudice, see Indiana Port Comm'n v. Bethlehem Steel Corp., 702 F.2d 107 (7th Cir.1983), we believe that the district court's consideration of Smith's response along with his motion for relief from judgment satisfies that requirement.
 
 
 11
 Next, Smith argues that the district court erred by refusing to allow him to prove that the defendants had failed to comply with discovery. Although Smith terms the information that he sought "vital," he fails to go beyond this label and identify what he was interested in discovering. Without any indication of what type of information Smith sought, we cannot say that the district court abused its discretion.
 
 
 12
 Finally, based on the disposition of Smith's claims, we deny as moot his motion for appointment of counsel.
 
 
 13
 AFFIRMED.
 
 ATTACHMENT
 UNITED STATES DISTRICT COURT
 CENTRAL DISTRICT OF ILLINOIS
 
 14
 Johnny Smith, Plaintiff,
 
 
 15
 vs.
 
 
 16
 Marjorie Donohue, et al., Defendants.
 
 ORDER
 No. 88-2405
 Feb. 13, 1991
 
 17
 The plaintiff, a state prisoner, has brought this civil rights action pursuant to 42 U.S.C. § 1983. The plaintiff claims that the defendants, members of the Illinois Department of Corrections' Publication Review Committee, violated the plaintiff's First and Fourteenth Amendment rights. The plaintiff alleges that the defendants approved, then later confiscated, the plaintiff's pornographic magazines. This matter is before the court for consideration of pending motions.
 
 
 18
 The plaintiff's motions for default and for entry of final judgment will be denied. In response to the court's rule to show cause, the defendants state that they have complied with all outstanding discovery requests. Counsel for the defendants further asserts that he did not respond to the plaintiff's motions because he deemed the motions frivolous. While the defendants' attorney has been rather lax in his defense of this case, the court will not enter judgment for the plaintiff on the basis of a technicality.
 
 
 19
 Turning, then, to the parties' substantive motions, the defendants' motion for summary judgment will be allowed, and the plaintiff's motion for summary judgment will be denied. A review of the record, as well as applicable case law, reveals that the defendants are entitled to judgment as a matter of law.
 
 
 20
 Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Herman v. National Broadcasting Co., Inc., 744 F.2d 604, 607 (7th Cir.1984), cert. denied, 470 U.S. 1028 (1985). "[I]n determining whether factual issues exist, a reviewing court must view all the evidence in the light most favorable to the non-moving party." Black v. Henry Pratt Co., 778 F.2d 1278, 1281 (7th Cir.1985). Celotex, 477 U.S. at 322. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party there is no 'genuine' issue for trial." Mechnig v. Sears, Roebuck & Co., 864 F.2d 1359 (7th Cir.1988).
 
 
 21
 The following facts are undisputed: On December 29, 1987, the plaintiff ordered two sexually explicit magazines ("OSO Ass Volume 1" and "Oriental Anal # 1) while confined at the Pontiac Correctional Center. A staffer on Pontiac's review committee named Kathy Coniglia (non-defendant) authorized the plaintiff to receive the publications, apparently sight unseen. The magazines arrived on January 19, 1988.
 
 
 22
 According to the plaintiff, the rules regarding acceptable reading materials changed, however, in the interim between order and receipt. Therefore, Pontiac's review committee notified the plaintiff that the magazines were being held pending review. On January 29, 1988, a hearing was held, at which the plaintiff was not allowed to present evidence. After hearing the matter, the committee advised the plaintiff that he would not be allowed to receive either publication.
 
 
 23
 The plaintiff appealed the rejection, and the materials were forwarded to the IDOC's Central Publication Review Committee (chaired by the defendants to this action). The plaintiff did not receive a final notification of denial until November 2, 1988, although he had previously notified the defendants that he had only ten days to return the materials for a refund. The plaintiff contends that the IDOC's guidelines are overly broad, that the magazines did not violate Supreme Court obscenity standards, and that the defendants ignored departmental regulations. The plaintiff further maintains that the initial approval and later disapproval violates ex post facto laws.
 
 
 24
 The defendants did not deny the plaintiff due process by rejecting the magazines after they arrived at the institution. The defendants to this action are all members of the Central Publication Review Committee. They were not involved in Pontiac officials' approval and subsequent rejection of the magazines. In any case, the court is not persuaded by the plaintiff's argument that he was constitutionally entitled to receive the magazines once they were preliminarily authorized.
 
 
 25
 The court also finds that the plaintiff had no protected interest in "presenting evidence" when the magazine rejection was reviewed. Prison Rule 525.230 does allow inmates to "request ... at the Committee's discretion" to appear before the Committee. The rules also grant inmates the opportunity to submit a written supportive statement, book reviews, and like materials concerning the merits of the publication in question. See Ill.Admin.Code, Tit. 20, Section 525.230(b)(1), (2) (1987). However, those procedural rules do not establish "specific substantive predicates" that limit the discretion of official decision makers and mandate a particular outcome to be reached if the relevant criteria have been met. Kellas v. Lane, (7th Cir.1991). None of the regulations which the plaintiff contends were violated impose any substantive limitations. Therefore, a failure to follow these procedural standards did not violate the due process clause.
 
 
 26
 In Procunier v. Martinez, 416 U.S. 396, 418-19 (1974), overruled on other grounds by Thornburgh v. Abbott, 490 U.S. 401 (1989), the Supreme Court stated that the decision to censor inmate mail must be accompanied by minimum procedural safeguards, including notice of censorship to the sender and recipient of the mail, and an opportunity to protest to an official other than the censor. In this analogous situation, the defendants complied with these procedures. The plaintiff received notice, and had an opportunity to appeal the denial to the IDOC Central Publication Review Committee.[1] The rejection of the magazines did not deprive the plaintiff of due process.
 
 
 27
 The plaintiff's challenge to the IDOC's guidelines is also without constitutional merit. In Turner v. Safley, 482 U.S. 78 (1987), O'Lone v. Estate of Shabazz, 482 U.S. 342 (1987), and most recently, Thornburgh v. Abbott, 490 U.S. 401 (1990), the United States Supreme Court directly addressed the standard of review appropriate for prison regulations which impinge on inmates' constitutional rights. In each of these cases the Supreme Court rejected the application of "strict scrutiny" analysis to this type of prison regulation. Instead, the Court decided that the prison regulation must only pass a "reasonable relationship" test. See, e.g., Thornburgh, 490 U.S. at 404.
 
 
 28
 The Turner Court affirmed federal regulations permitting wardens, pursuant to specified criteria, to reject incoming publications deemed to be "detrimental to the security, good order, or discipline of the institution or [which] might facilitate criminal activity." Re-emphasizing the deference due prison administrators, the Court utilized the factors set forth in Turner in determining "reasonableness": first, whether the governmental objective is legitimate and neutral; second, whether inmates have alternative means of exercising their First Amendment rights; and third, the impact that accommodation of the asserted right will have on others, such as inmates and guards, in the prison. Thornburgh, 401 U.S. at 414-418. The obscenity regulation challenged here, typical of most prison systems, passes constitutional muster.
 
 
 29
 In the instant case, prison rules dictate that the Committee
 
 
 30
 shall only prohibit acceptance of any material it finds to be: (1) Obscene, according to the definition of obscenity established by the U.S. Supreme Court; or (2) A clear and present danger to the physical safety and security of persons and property within the facility.
 
 
 31
 Section 525.230(c). The regulation serves the legitimate and neutral objective of jail security: "it is rational for [prison officials] to exclude materials that, although not necessarily 'likely' to lead to violence, are determined by [prison officials] to create an intolerable risk of disorder under the conditions of a particular prison at a particular time." Thornburgh, 401 U.S. at 417. Inmates also have alternative means of exercising their First Amendment rights, by receiving publications not deemed inappropriate in the prison setting. Finally, this court defers to prison officials' judgment that accommodating inmates' requests for hard-core pornography would jeopardize institutional interests.
 
 
 32
 The court furthermore rejects the plaintiff's argument that the regulation in question is overly broad. By definition, the rule embraces the Supreme Court's standards of acceptability of such a regulation. Moreover, the court finds no constitutional violation in prison officials' alleged failure to "publicize" its censorship guidelines, which are set forth in the Administrative Code. The court finds as a matter of law that the regulation is "reasonably related to legitimate penological interests," and hence valid.
 
 
 33
 Finally, applying the relevant standards to the case at bar, the court accepts the judgment of prison officials that the magazines in question were "obscene." Again, prison officials have wide latitude in the day to day operation of correctional institutions. Bell v. Wolfish, 441 U.S. 520, 547 (1978). Prison administrators are accorded "wide-ranging deference"
 
 
 34
 in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security. Such considerations are peculiarly within the province and professional expertise of corrections officials, and in the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to these considerations, courts should ordinarily defer to their expert judgment in such matters.
 
 
 35
 Bell, 441 U.S. at 547-548.
 
 
 36
 The test propounded in Miller v. California, 413 U.S. 15, 24-25 (1973) defines as "obscene" printed material that, taken as a whole: (1) lacks serious literary, artistic, political or scientific value; (2) the average person, applying contemporary community standards, would find appeals to a prurient interest; and (3) depicts or describes in a patently offensive way certain enumerated kinds of conduct. Generally, explicit sexual acts fall into such prohibitions.
 
 
 37
 In rejecting the plaintiff's magazines, prison officials noted that the publications showed anal, oral and vaginal penetration, "double penetration," and ejaculation. Illinois courts have found the obscenity of similar materials to be "blatantly evident." See People v. Morrison, 162 Ill.App.3d 299, 306 (2nd Dist.1987), app. denied, 118 Ill.2d 549 (1988). The court rejects the plaintiff's argument that only materials portraying homosexuality, bestiality, incest, or sex with children can be deemed "obscene." As exhibited by the defendants' exhibits, prison officials evaluated several publications, rejecting only some. The court accepts the decision of the defendants that the materials here in question were obscene and inappropriate at Pontiac.
 
 
 38
 In conclusion, the court finds that no material facts are in dispute and that the defendants are entitled to judgment as a matter of law. Illinois' prison regulations concerning the admissibility of non-approved publications are reasonably related to legitimate penological interests, and are thus valid. Furthermore, the procedures by which the plaintiff's sexually explicit magazines were rejected did not violate due process, and the court defers to prison officials' finding that the magazines were "obscene." Accordingly, summary judgment will be granted in favor of the defendants.
 
 
 39
 IS THEREFORE ORDERED that the plaintiff's motions for entry of default (docket # 52) and for final judgment (docket ## 64 and 65) are denied.
 
 
 40
 IT IS FURTHER ORDERED that the plaintiff's motion for summary judgment (docket # 53) is denied.
 
 
 41
 IT IS FURTHER ORDERED that the defendants' cross-motion for summary judgment (docket # 61) is allowed. The Clerk is directed to enter judgment in favor of the defendants and against the plaintiff. The parties are to bear their own costs. Cause stricken and case dismissed.
 
 
 
 *
 After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." See Fed.R.App.P. 34(a); Cir.R. 34(f). No such statement having been filed, the appeal has been submitted on the briefs and record
 
 
 [1]
 On appeal, Smith argues strenuously that under Trapnell v. Riggsby, 622 F.2d 290 (7th Cir.1980), the magazines were not obscene because they did not depict homosexuality, bestiality, sadism, or sex acts with children. Smith misreads Trapnell. In Trapnell, we upheld as constitutional prison regulations that excluded such materials. We did not hold that such materials constitute the entire universe of what is obscene
 
 
 [1]
 Although the record does not indicate whether the purveyors of the pornographic materials in question were notified of the confiscation of the plaintiff's magazines, this omission would only affect whatever rights, if any, the magazine publisher had under the First Amendment. See Procunier, supra