(897 P.2d 188)
No. 71,804

JAMES TUCKER LEVIER, *Appellee*, v. MICHAEL A. NELSON, *et al.*, *Appellants.*

Opinion filed June 16, 1995.

*Julie L. Riddle* and *Lou Allen*, special assistant attorneys general, for appellants.

*Steven C. Sherwood*, of El Dorado Correctional Facility, of El Dorado, for appellee.

Before ROYSE, P.J., PIERRON, J., and ROBERT J. SCHMISSEUR, District Judge, assigned.

SCHMISSEUR, J.: James Tucker LeVier, an inmate of the El Dorado Correctional Facility (EDCF), brought an action under 42 U.S.C. § 1983 (1988), alleging that EDCF had violated his First Amendment rights by prohibiting him from receiving a photograph of his seminude ex-wife. The district court found that EDCF's regulation prohibiting such photographs was unconstitutionally ov-

erbroad and ordered EDCF to modify the regulation and deliver the photograph to LeVier. Defendants appeal. We reverse.

Although LeVier has since been transferred to a different prison, rendering the present dispute moot, we accept jurisdiction because of the possibility that LeVier may at some future time be transferred back to EDCF and the probability that other correctional facilities in Kansas have similar regulations.

On February 12, 1992, inmate LeVier received a Valentine's Day card from his ex-wife along with a notice from the EDCF mail review officer that a photograph of his ex-wife showing her bare breasts had been seized because it was obscene. LeVier appealed the seizure to the warden, Michael A. Nelson, who denied the appeal. (Nelson cited EDCF Order 016-102 II.B.4.i, which provides that inmates shall not be allowed to receive nude or seminude photographs unless they are part of a publication approved by the Mail Review Committee and/or they have been published for commercial use.) LeVier appealed Nelson's decision to the Secretary of Corrections, who also denied LeVier's appeal based on EDCF Order 016-102 II.B.4.i.

LeVier then filed this action in district court alleging various violations of his constitutional rights and seeking a declaratory judgment, damages, and injunctive relief. LeVier named Nelson, the EDCF warden, and Becky Burk, the EDCF mail review officer, as defendants. Defendants filed a motion for judgment on the pleadings pursuant to K.S.A. 60-212(c) as well as a motion to dismiss. After a hearing, the district court held that EDCF Order 016-102 II.B.4.i was unconstitutionally overbroad and ordered EDCF to modify the order as well as deliver the photograph to LeVier. The court refused to award LeVier damages and ordered LeVier not to display the photograph or allow any other inmate to see it. The court denied defendants' motion for reconsideration, and this appeal followed.

The issue then is whether the district court erred in determining that the EDCF order prohibiting LeVier's receipt of a photograph of his seminude ex-wife violated his First Amendment rights.

This court's review of the district court's conclusions of law is unlimited. See *Gillespie v. Seymour*, 250 Kan. 123, 129, 823 P.2d 782 (1991).

LeVier's initial complaint regarding the seizure of the photograph focused on the mail review officer's characterization of the photograph as obscene. At the hearing, defendants conceded that the photograph was not obscene but argued that it was legitimately seized pursuant to EDCF Order 016.102 II.B.4.i. As a result, the definition of obscenity is no longer an issue in this case. The only issue is whether the district court correctly ruled that the EDCF order is unconstitutionally overbroad.

In reaching its decision, the district court discussed two cases from other jurisdictions. In the first, the Seventh Circuit Court of Appeals upheld a federal prison regulation similar to the EDCF order at issue here. See *Trapnell v. Riggsby*, 622 F.2d 290 (7th Cir. 1980). The regulation prohibited inmates from receiving nude or seminude photographs unless the photographs had been published for commercial use. The *Trapnell* court found that the regulation furthered the prison officials' substantial interest in security and order because intimate photographs of an inmate's wife or girlfriend are highly emotionally charged items for an inmate to have in his possession. If such photographs were viewed by other inmates, conflicts or assaults could easily result. *Trapnell*, 622 F.2d at 292-93.

At odds with *Trapnell* is the Ninth Circuit Court of Appeals opinion in *Pepperling v. Crist*, 678 F.2d 787 (9th Cir. 1982). The *Pepperling* court recognized that nude photographs of inmates' wives or girlfriends might lead to violent altercations among inmates, but found a complete ban of such pictures to be too broad. The court explained:

"It is not the mere receipt of such photographs by a particular prisoner which provokes violence but rather the interest aroused in other inmates by the photographs. A less restrictive alternative would be to prohibit the prisoners from tacking these photographs up in their cells or otherwise displaying them to the 'public.' " *Pepperling*, 678 F.2d at 790-91.

Both *Trapnell* and *Pepperling* cite the United States Supreme Court case, *Procunier v. Martinez*, 416 U.S. 396, 40 L. Ed. 2d 224, 94 S. Ct. 1800 (1974). The district court in the instant case particularly emphasized the *Martinez* holding that the censorship of prisoners' mail may be justified when certain criteria are met. First,

the order in question must further important or substantial governmental interests that are unrelated to the suppression of expression, such as the interests in prison security, order, and rehabilitation. However, the limitation must be no greater than necessary to protect the governmental interest involved. *Martinez*, 416 U.S. at 413.

The district court adopted the reasoning of *Pepperling* and *Martinez* in holding that the EDCF order at issue was unconstitutionally overbroad "as far as it seeks to limit inmates possessing nude or partially nude photographs of wives or girlfriends which are not displayed in a public manner." The district court noted that LeVier planned to keep the photograph private and ordered him to do so.

Defendants argue that the district court erred in following *Pepperling* and *Martinez* because the "least restrictive alternative" test promulgated by *Martinez* is no longer appropriate under more recent United States Supreme Court decisions. *Martinez* was overruled in part by *Thornburgh v. Abbott*, 490 U.S. 401, 104 L. Ed. 2d 459, 109 S. Ct. 1874 (1989). In *Thornburgh*, the Court addressed a First Amendment claim regarding a federal prison regulation which allowed prison officials to reject incoming publications which might be detrimental to prison security. The Court declined to apply the *Martinez* standard of review, explaining that *Martinez* was limited to regulations concerning outgoing prison correspondence. Outgoing correspondence does not pose a threat to prison order and security of the same seriousness as incoming correspondence; thus, *Martinez*' stricter standard of review was appropriate only in cases involving outgoing correspondence.

Instead, the *Thornburgh* Court adopted the reasonableness standard of *Turner v. Safley*, 482 U.S. 78, 96 L. Ed. 2d 64, 107 S. Ct. 2254 (1987). *Turner* held that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner*, 482 U.S. at 89. The Court further explained its rejection of a stricter standard of review:

"Subjecting the day-to-day judgments of prison officials to an inflexible strict scrutiny analysis would seriously hamper their ability to anticipate security problems and to adopt innovative solutions to the intractable problems of prison adminis-

tration. The rule would also distort the decisionmaking process, for every administrative judgment would be subject to the possibility that some court somewhere would conclude that it had a less restrictive way of solving the problem at hand." *Turner*, 482 U.S. at 89.

The *Turner* reasonableness standard involves several factors. First, the reviewing court "must determine whether the governmental objective underlying the regulations at issue is legitimate and neutral, and that the regulations are rationally related to that objective." *Thornburgh*, 490 U.S. at 414. Second, the court should consider whether alternative means of exercising the right remain open to the inmates. *Thornburgh*, 490 U.S. at 417. Third, the court should consider the impact that accommodation of the inmate's right would have upon other inmates and guards at the prison. Finally, " '[t]he existence of obvious, easy alternatives may be evidence that the regulation is not reasonable, but is an "exaggerated response" to prison concerns.' " *Thornburgh*, 490 U.S. at 418 (quoting *Turner*, 482 U.S. at 90-91).

Defendants argue that *Thornburgh* controls the instant case and that the EDCF order in question is constitutionally valid under the *Thornburgh* standard. LeVier argues that *Thornburgh* is distinguishable because it dealt with "incoming publications, material requested by an individual inmate but targeted to a general audience. Once in the prison, material of this kind reasonably may be expected to circulate among prisoners, with the concomitant potential for coordinated disruptive conduct." *Thornburgh*, 490 U.S. at 412. LeVier argues that the facts of his case are significantly different from those in *Thornburgh*. While LeVier makes a valid distinction, *Thornburgh* appears to promulgate a general standard to be applied whenever a prison regulation is challenged as an unconstitutional infringement upon inmates' rights.

LeVier next argues that, even under the *Thornburgh* standard, the EDCF order is invalid because the district court found an easy and obvious alternative under the fourth prong of the test. As discussed above, the fourth prong provides that the existence of an easy and obvious alternative may be evidence that the regulation is an "exaggerated response" to prison concerns and is unreasonable. *Thornburgh*, 490 U.S. at 418.

"This is not a 'least restrictive alternative' test: prison officials do not have to set up and then shoot down every conceivable alternative method of accommodating the claimant's constitutional complaint. [Citation omitted.] But if an inmate claimant can point to an alternative that fully accommodates the prisoner's rights at *de minimis* cost to valid penological interests, a court may consider that as evidence that the regulation does not satisfy the reasonable relationship standard." *Turner*, 482 U.S. at 90-91.

LeVier points out that the district court found an easy and obvious alternative which is at *de minimis* cost to any penological interest—allowing the inmate to receive the photograph but requiring the inmate to keep the photograph private and not allow any other inmate to see it.

While the court's order may constitute an "easy and obvious" alternative for LeVier because LeVier is in administrative segregation and is locked up 23 hours a day alone in his cell, such an alternative may not be appropriate in other cases. Defendants point out that LeVier's situation is not the norm for other prisoners and that LeVier may not always remain in a one-man cell. Simply ordering an inmate to keep a photograph private is not necessarily an effective solution for inmates who live under normal prison conditions with their attendant lack of privacy. Further, it would be an unreasonable burden upon the institution to force it to maintain administrative records as to which inmates have personal effects which might be emotionally charged and which would possibly be permissible in one housing circumstance but inappropriate and potentially a security threat in a more open environment. Because the court's order does not constitute an easy and obvious alternative to the EDCF order in all cases, it should not be considered as evidence that the EDCF order is an exaggerated response to prison concerns.

We reverse and hold that the EDCF order is reasonably related to the prison's interest in order and security and is constitutionally valid under the *Thornburgh* standard.