PER CURIAM.
The petitioners, John Allen Muhammad and John Lee Malvo, filed these petitions for a writ of mandamus directing Judge Gene Reese to set aside his order granting the Montgomery County district attorney’s motion to inspect mail addressed to the petitioners and delivered to the Montgomery County jail or, in the alternative, to set the matter for a hearing. The November 2002 Montgomery County grand jury indicted the petitioners for two counts of capital murder for murdering Claudine Parker during the course of a robbery and for causing her death by using a deadly weapon fired from a vehicle. See § 18A-5-40(a)(2) and § 13A-5-40(a)(18), Ala.Code 1975.
Although it is not entirely clear from the petitions, apparently mail addressed to both petitioners was delivered to the Montgomery County jail. The petitioners are not and have never been incarcerated in any detention facility in Alabama; they are currently in a facility in the State of Virginia. The district attorney filed a motion to inspect the mail. The petitioners filed written objections to the district attorney’s motion to inspect. Judge Reese, without holding a hearing, granted the district attorney’s motion. The petitioners then filed a joint motion to stay the proceedings until they could obtain review of Judge Reese’s order in a higher court. Judge Reese granted the motion; these petitions followed. Because the petitions address the same issue, we have consoli *388 dated them for purposes of writing one opinion.
The district attorney’s motion to inspect read as follows:
“Comes now the State of Alabama, by and through its District Attorney for the Fifteenth Judicial Circuit, Eleanor I. Brooks, and requests this Court to allow the inspection of the mail addressed to John Allen Muhammad and John Lee Malvo prior to forwarding, on the following grounds:
“1. The Montgomery Municipal Jail has received mail addressed to John Allen Muhammad and John Lee Mal-vo, c/o Montgomery County Jail, Montgomery, Alabama.
“2. The two addressees are not currently in the custody of the Montgomery Municipal Jail, but are in custody in the State of Virginia.
“3. There are unserved Alabama indictments against each for Capital Murder and Attempted Murder.
“4. The policy of the Montgomery Municipal Jail, had they been in custody there, is to inspect all mail received by inmates before delivery.
“5. Without inspecting the mail there is no way to determine whether forwarding this mail to the addressees poses a security risk or contains contraband.
“6. A search of the addressees’ mail is justified where it furthers the ‘substantial governmental interest of security’ and order. Procunier v. Martinez, 416 U.S. 396, 94 S.Ct. 1800, 40 L.Ed.2d , 224 (U.S.Cal.Apr.29, 1974)(No. 72-1465).”
Both petitioners filed written objections to the motion. Muhammad argued that he has a right to have his mail forwarded to him without its being tampered with and inspected by Alabama officials. Malvo argued that he is not an inmate at the Montgomery County jail and that the officials in Montgomery have no legitimate security interest in inspecting his mail. He further asserted that “mail addressed to an individual and received at an address where the person does not reside must be returned to the postal service for forwarding.”
Judge Reese issued the following order:
“This matter is before the Court upon the State’s motion to inspect inmate mail. Upon consideration of the same, it is hereby ORDERED, ADJUDGED AND DECREED that all mail addressed to John [Allen] Muhammad and/or [John] Lee Malvo currently in possession of law enforcement in Montgomery County, Alabama, be opened and inspected.”
These petitions followed.
Initially, Malvo argues in his mandamus petition that the circuit court did not have authority to authorize the inspection of mail delivered by the United States Postal Service — a federal agency.
Our research has revealed no case from any jurisdiction — state or federal — that holds that a state court is without authority to consider a motion to inspect a state inmate’s mail delivered to a state detention facility. In fact, other state courts have considered similar issues and have implicitly rejected this contention. See Mallery v. Lewis, 106 Idaho 227, 678 P.2d 19 (1983) (court held screening of mail furthered substantial government interest and did not violate pretrial detainees’ rights; pretrial detainees had alleged that their rights were violated when all their correspondence was opened and censored); Brooks v. Cupp, 6 Or.App. 539, 488 P.2d 804 (1971)(trial court dismissed petition for writ of mandamus challenging procedure that censored petitioner’s mail; appellate court upheld censorship practices); LeVier *389 v. Nelson, 21 Kan.App.2d 172, 897 P.2d 188 (1995) (rule that prohibited state prisoner from receiving photographs of his semi-nude ex-wife was not an unconstitutional infringement on inmate’s rights). But see In re Gonzales, 212 Cal.App.3d 459, 260 Cal.Rptr. 506 (1989) (state prisoner successfully challenged policy that did not allow him confidential correspondence with his attorney regarding a divorce proceeding to which he was a party).
This Court has general superintendence over inferior courts regarding matters that arise during the course of a criminal prosecution. Based on the authority granted to this Court by Amendment No. 328, § 6.03(d), Ala. Const.1901, we believe that jurisdiction of these petitions is properly with this Court.[1]
The petitioners argue that Judge Reese’s ruling allowing the district attorney to inspect their mail violates their constitutional rights under the First, Fifth, and Fourteenth Amendments to the United States Constitution. They cite the United States Supreme Court’s holding in Procunier v. Martinez, 416 U.S. 396, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974), in support of this contention.[2]
Our research has found three United States Supreme Court cases that specifically address an inmate’s right to correspond through the United States mail. See Procunier v. Martinez; Turner v. Safley, 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987); and Thornburgh v. Abbott, 490 U.S. 401, 109 S.Ct. 1874, 104 L.Ed.2d 459 (1989).[3]
In Procunier v. Martinez, the United States Supreme Court considered the constitutionality of a California prison regulation that allowed broad censorship of state inmates’ incoming and outgoing mail. The Court applied the strict-scrutiny test for determining whether such a regulation was constitutional. To meet that test, 1) the regulation must further an important or substantial governmental interest unrelated to the suppression of expression, and 2) the limitation of the First Amendment freedom may be no greater than is necessary or essential to protect the particular governmental interest involved. 416 U.S. at 413, 94 S.Ct. 1800.
Later, in Turner v. Safley, the United States Supreme Court addressed the constitutionality of a regulation of the Missouri Division of Corrections that placed a myriad of restrictions on prisoner-to-prisoner mail and that allowed corrections officials broad discretion in determining its enforcement. In Turner, the Court for the first time specifically recognized that an inmate has a constitutional interest in cor *390 responding with other inmates. However, the Court reasoned that the strict-scrutiny test articulated in Procunier v. Martinez was too restrictive and adopted a “reasonable-relationship” test for prisoner-to-prisoner mail. That test takes into account several factors: 1) whether the governmental objective underlying the regulation at issue is legitimate and neutral, i.e., whether the regulation is rationally related to that objective; 2) whether there are alternative means of allowing the inmate to exercise the right sought to be exercised; 3) the impact accommodation of the asserted right will have on guards and other prisoners; and 4) “the existence of obvious, easy alternatives may be evidence that the regulation is not reasonable, but is an ‘exaggerated response’ to prison concerns.” 482 U.S. at 90, 107 S.Ct. 2254.
Finally, in Thornburgh v. Abbott, the United States Supreme Court considered the constitutionality of a federal regulation that allowed an inmate to receive publications without prior approval but also authorized the warden to reject publications if certain circumstances were present. The Court specifically limited its earlier holding in Procunier v. Martinez to outgoing mail. The Court stated:
“[W]e acknowledge today that the logic of our analyses in [Procunier v.] Martinez[, 416 U.S. 396, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974)] and Turner [v. Safley, 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987)] requires that Martinez be limited to regulations concerning outgoing correspondence. As we have observed, outgoing correspondence was the central focus of our opinion in Martinez. The implications of outgoing correspondence for prison security are of a categorically lesser magnitude than the implications of incoming materials.”
490 U.S. at 413, 109 S.Ct. 1874. The Thornburgh Court instead adopted the standard articulated in Turner for evaluating rules and regulations concerning incoming correspondence to inmates.
The United States Supreme Court has also recognized that correspondence to inmates is classified according to its sender. In Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), the United States Supreme Court noted that “legal” mail from an attorney to an inmate could be opened only in the inmate’s presence and it could not be read by anyone other than the inmate.
Many jurisdictions have adopted rules or regulations that make distinctions in handling inmate mail dependent on the sender. A Kansas regulation distinguishes between legal mail, official mail, and privileged mail. See Kan. Admin. Regs. 44-12-601. In Kansas, legal mail “includes letters between the inmate and any lawyer, a judge, a clerk of a court, or any intern or employee of legal services for prisoners.” Reg. 44-12-601(a)(l). Kansas defines official mail as “any mail to an official of the state or federal government who has authority to control, or to obtain or conduct an investigation of, the custody or conditions of confinement of the inmate.” Reg. 44-12-601(a)(2). Privileged mail is defined in Kansas as mail between an inmate and his doctor. Reg. 44-12-601(a)(3). Under these Kansas regulations all incoming mail clearly marked as “legal, official, or privileged” may be opened only in the inmate’s presence. Reg. 44-12-601(e). The State of Illinois defines legal mail as “incoming privileged mail”; however, legal mail does not include incoming mail from a judge or magistrate of any court. Ill. Admin. Code tit. 20, § 525.110(e) and (g) (2003). “Under Michigan’s established policy, privileged mail is to be opened only in the presence of the addressee prisoner if the prisoner has opted to request such treatment.” Knop v. *391 Johnson, 977 F.2d 996, 1012 (6th Cir.1992), cert. denied, Knop v. McGinnis, 507 U.S. 973, 113 S.Ct. 1415, 122 L.Ed.2d 786 (1993). The United States Court of Appeals for the Third Circuit in Bieregu v. Reno, 59 F.3d 1445 (3d Cir.1995), discussed the federal regulations for handling incoming inmate mail. The Court stated:
“The federal regulatory framework for handling prisoner mail is straightforward. The regulations distinguish between incoming ‘general mail,’ which the Warden must open and inspect and may read, and incoming ‘special mail,’ which the Warden may open ‘only in the presence of the inmate for inspection for physical contraband and the qualification of any enclosures as special mail.’ 28 C.F.R. §§ 540.14(a), 540.18(a). Special mail includes incoming mail from federal and state courts. § 540.2(c). In order to receive the special handling, incoming special mail must be marked ‘Special Mail — Open only in the presence of the inmate’ and have a clearly identified sender. §§ 540.2(c), 540.18(a). According to a [Bureau of Prisons] Policy Statement, however, mail ‘from the chambers of a federal judge ... should be given special handling,’ even when it lacks the precise marking. Federal Bureau of Prisons, Program Statement No. 5265.08 (October 1,1985), § 13(a).” ■
59 F.3d at 1448-49 (footnote omitted).
The petitioners here are both pretrial detainees. The United States Supreme Court has recognized that pretrial detainees are entitled to greater rights than an individual who has been convicted and is serving time in a state or federal penitentiary. This specific issue was addressed in-depth by the Court in Bell v. Wolfish, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). We quote extensively from that Court’s opinion:
“In evaluating the constitutionality of conditions or restrictions of pretrial detention that implicate only the protection against deprivation of liberty without due process of law, we think that the proper inquiry is whether those conditions amount to punishment of the detainee. For under the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law.... A person lawfully committed to pretrial detention has not been adjudged guilty of any crime. He has had only a ‘judicial determination of probable cause as a prerequisite to [the] extended restraint of [his] liberty following arrest.’ Gerstein v. Pugh, supra, [420 U.S. 103,] at 114 [(1975)]; see Virginia v. Paul, 148 U.S. 107, 119 (1893).... Under such circumstances, the Government con-cededly may detain him to ensure his presence at trial and may subject him to the restrictions and conditions of the detention facility so long as those conditions and restrictions do not amount to punishment, or otherwise violate the Constitution.
[[Image here]]
“... In Kennedy v. Mendoza-Martinez, [372 U.S. 144 (1963),] the Court examined the automatic forfeiture-óf-cit-izenship provisions of the immigration laws to determine whether that sanction amounted to punishment or a mere regulatory restraint. While it is all but impossible to compress the distinction into a sentence or a paragraph, the Court there described the tests traditionally applied to determine whether a governmental act is punitive in nature:
“ ‘Whether the sanction involves an affirmative disability or restraint, whether it has historically been regarded as a punishment, whether it *392 comes into play only on a finding of scienter, whether its operation will promote the traditional aims of punishment — retribution and deterrence, whether the behavior to which it applies is already a crime, whether an alternative purpose to which it may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned are all relevant to the inquiry, and may often point in differing directions.’ 372 U.S., at 168-169 (footnotes omitted).
“The factors identified in Mendoza-Martinez provide useful guideposts in determining whether particular restrictions and conditions accompanying pretrial detention amount to punishment in the constitutional sense of that word. A court must decide whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose. See Flemming v. Nestor, supra, [368 U.S. 603,] at 613-617 [(1960)]. Absent a showing of an expressed intent to punish on the part of detention facility officials, that determination generally will turn on ‘whether an alternative purpose to which [the restriction] may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned [to it].’ Kennedy v. Mendoza-Martinez, supra, at 168-169; see Flemming v. Nestor, supra, at 617. Thus, if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to ‘punishment.’ Conversely, if a restriction or condition is not reasonably related to a legitimate goal — if it is arbitrary or purposeless — a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees qua detainees. See ibid. Courts must be mindful that these inquiries spring from constitutional requirements and that judicial answers to them must reflect that fact rather than a court’s idea of how best to operate a detention facility.”
441 U.S. at 535-39, 99 S.Ct. 1861 (footnotes omitted).
Many legal considerations are presented in this case that were not addressed in the circuit court. First, we do not know what mail was the subject of the motion. As noted above, mail from certain senders is entitled to preferential treatment. There is absolutely no indication that before ruling on the motion the trial court was aware of the type of mail that was the subject of the district attorney’s motion.[4] Second, we do not know what regulation or policy was in effect at the Montgomery County jail concerning the inspection of pretrial detainees’ mail. No copy of any such policy is included in the documents that have been furnished to this Court. Third, we do not know whether the trial court considered the petitioners’ status as pretrial detainees. Fourth, it is clear from the documents furnished to this Court that the trial court in granting the motion relied on caselaw the holding of which had been expressly limited. Fifth, we question whether an Alabama district attorney can establish a legitimate security interest in inspecting the mail of a Virginia detainee.[5] *393 Sixth, though not specifically argued in these petitions but argued in a similar petition filed in Alabama by Malvo’s Virginia attorney (no. CR-02-0785), a federal postal regulation specifically addresses the forwarding of an inmate’s mail when an inmate has been transferred to a different detention facility. The brief in support of the mandamus petition in CR-02-0785 states:
“Postal Service regulations regarding the delivery of mail to inmates are contained in the Domestic Mail Manual, a document published by the Postal Service that is incorporated by reference into the Federal Postal Regulations by Title 39 of the Code of Federal Regulations, Section 111.1. The pertinent section of the Manual reads:
“ ‘Mail addressed to a patient or inmate at an institution is delivered to the institution authorities. If the addressee is no longer at that address, the mail must be redirected to the current address, if known, or endorsed appropriately and returned by the institution to the post office.’ ”
(Malvo’s brief in CR-02-0785, pp. 9-10.)[6]
For a writ of mandamus to issue, the petitioner must establish: (1) a clear legal right in the petitioner to the relief sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) no adequate remedy at law; and (4) the properly invoked jurisdiction of the reviewing court. State v. Williams, 679 So.2d 275 (Ala.Crim.App.1996).
In light of the constitutional implications discussed above, we find that the petitioners have satisfied the prerequisites for issuing a writ of mandamus only to the extent that the circuit court is directed to hold a hearing on the issues addressed in this opinion and to apply the appropriate standards as set out above. All other relief requested in these petitions is hereby denied.
PETITIONS GRANTED IN PART; DENIED IN PART; WRIT ISSUED.
McMILLAN, PM., and BASCHAB and SHAW, JJ., concur.
COBB and WISE, JJ., concur in the result.

.This section states:
"(d) The court of criminal appeals shall have and exercise original jurisdiction in the issuance and determination of writs of quo warranto and mandamus in relation to matters in which said court has appellate jurisdiction. Said court shall have authority to issue writs of injunction, habeas corpus and such other remedial and original writs as are necessary to give it a general superintendence and control of jurisdiction inferior to it and in matters over which it has exclusive appellate jurisdiction; to punish for contempts by the infliction of a fine as high as one hundred dollars, and imprisonment not exceeding ten days, one or both, and to exercise such other powers as may be given to said court by law.”

. Procunier v. Martinez was also the case the district attorney relied on in her motion to inspect the petitioners’ mail. Our research has revealed that the United States Supreme Court has specifically limited its holding in Procunier v. Martinez to outgoing mail. Thornburgh v. Abbott, 490 U.S. 401, 109 S.Ct. 1874, 104 L.Ed.2d 459 (1989).

. We can locate no Alabama case that specifically addresses this issue; therefore, we have relied on cases from the United States Supreme Court.

. The petition for a writ of mandamus filed by Malvo's Virginia attorney in this Court states that Malvo was never notified that the Montgomery County jail had received any mail addressed to Malvo. CR-02-0785.

. This issue was not argued in the mandamus petitions; however, it was raised in the objections to the motion to inspect.

. This Court can take judicial notice of its own records. Hull v. State, 607 So.2d 369, 371 (Ala.Crim.App.1992).