In the

# United States Court of Appeals
## For the Seventh Circuit

No. 14-1694

TOBIAS PAYTON,

*Plaintiff-Appellant,*

*v.*

CHRIS CANNON, *et al.*,

*Defendants-Appellees.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 11 C 5955 — **Harry D. Leinenweber**, *Judge.*

SUBMITTED OCTOBER 29, 2015 — DECIDED DECEMBER 1, 2015

Before WOOD, *Chief Judge*, and POSNER and EASTERBROOK, *Circuit Judges.*

POSNER, *Circuit Judge.* Staff of Illinois's Stateville Prison intercepted a number of pornographic magazines that inmate Payton had ordered. These magazines have such names as "Bootylicious," "Black Video Illustrated," "Players Nasty," "Black Tail," "Adam Film World Guide Porn Stars," "Tight," and "Naughty Neighbors." They mainly contain photographs of naked or scantily clad women, but some also

contain photographs of sexual acts. The magazines are advertised on the Internet, and we doubt that they would be classified as obscene—nor does the prison so designate them. But the prison does forbid the inmates to receive any magazine that "includes sexually explicit material that by its nature or content poses a threat to security, good order, or discipline or it facilitates criminal activity" or is "otherwise detrimental to security, good order, rehabilitation, or discipline or it might facilitate criminal activity or be detrimental to mental health"—and the magazines we've listed, along with many similar ones, are deemed by the prison to be within the prohibition.

The plaintiff claims that the prohibition violates his First Amendment rights, for those rights include access to, as well as creation and dissemination of, oral and written communications, including magazines. The defendants, however—members of the prison staff who conduct the interceptions—moved for summary judgment on the basis of a statement by a former warden of Stateville, Marcus Hardy (warden from 2009 to 2012, and one of the defendants in the present case), that

> "publications or photographs that involve any sort of nudity" are a danger in the prison because of the possibility that "(1) the inmates will engage in black-market trading for the publications and photographs; (2) inmate-on-inmate violence and intimidation increases, especially when these publications become lost, stolen, and/or when there is a perception that the publications are not being fairly traded or shared; and (3) female employees at the maximum security correctional centers [such as Stateville] are more often objectified and harassed by the inmate population when the inmates are allowed to receive nude

publications, nude photographs and nude prints. In my experience, this has included, but not been limited to Stateville having to address instances of inmates openly pleasuring themselves [i.e., masturbating] before female correctional officers during rounds."

"When a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987). This is true even in the context of printed matter. "Prisons have great latitude in limiting the reading material of prisoners." *Mays v. Springborn*, 575 F.3d 643, 649 (7th Cir. 2009). Great latitude is not the same as unreviewable discretion, however, and the ex-warden's statement is the only evidence submitted by the defendants concerning harm to the prison from materials that the defendants want to forbid to the prisoners. But the plaintiff produced no evidence contrary to the warden's. Nor did he point out that the warden's statement appears to be based on impression rather than on data.

The plaintiff does argue that the prison staff should be required to read every issue of every magazine (rather than just six consecutive issues, as the staff is currently required to do) that it intercepts before deciding to add the magazine to the censored list; but that would be impractical. He also argues that the real reason for the prison's policy is that the staff dislikes pornography. This strikes us as an implausible generalization, though doubtless some staff (and not only the women) do dislike or disapprove of pornography; in any event, he provides no evidence. He has, in short, made no case against the district judge's grant of the defendants' motion for summary judgment. The suit was therefore rightly dismissed.

That said, we think it important to note for future reference that the ex-warden's statement, though plausible and thus sufficient for judgment given the absence of countervailing evidence, is not ironclad. Why the prison should be concerned if the prisoners swap these magazines is nowhere explained; nor is it suggested that arguments over sharing would cause a nontrivial increase in violence and intimidation. And as for inmates masturbating in front of female staff, it seems on the one hand a practice that male inmates can be expected to engage in even if they have no access to nude photographs and on the other a matter calling for swift punishment of the offenders.

As with so many behavioral issues touched by American law, one would like to see Stateville's ban on prisoners' access to photographs and print analyzed scientifically. That would not be impossible. There is an extensive academic literature bearing on the issue, some of which challenges the intuitions of prison wardens and staff. Illustrative is Corey D. Burton & Richard Tewksbury, "Policies on Sexually Explicit Materials in State Prisons," 24(2) *Criminal Justice Policy Review* 222 (2011), which found "little or no existing evidence to support the extension of findings of research from the general community [research that, as the article notes, tends to find a positive correlation between use of pornography and aggressive or even violent behavior toward women] to the behavior of prison inmates." Other studies include Michael Castleman, "Does Pornography Cause Harm? Porn Causes No Measurable Harm," *Psychology Today*, April 27, 2009, www.psychologytoday.com/blog/all-about-sex/200904 /does-pornography-cause-social-harm (visited November 30, 2015); Christopher J. Ferguson & Richard D. Hartley, "The Pleasure is Momentary … the Expense Damnable? The In-

fluence of Pornography on Rape and Sexual Assault," 14 *Aggression & Violent Behavior* 323 (2009). According to still another study, "the data reported and reviewed suggests … an inverse causal relationship between an increase in pornography and sex crimes." Milton Diamond, "Pornography, Public Acceptance and Sex Related Crime: A Review," 32 *Int'l J. Law & Psychiatry* 304 (2009).

Stateville's policy may be ineffectual—and it is costly. Staff is deflected to skimming boatloads of pornographic magazines. Prisoners are denied access to reading material that would lighten slightly the burden of imprisonment in a maximum-security prison and might reduce rather than increase disciplinary problems at the prison. The Illinois Department of Corrections, which owns and administers Illinois state prisons, might be well advised to study Stateville's pornography policy—and with an open mind.

Nevertheless, for the reasons stated earlier in this opinion, the judgment of the district court is

AFFIRMED.