**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted May 21, 2018*
Decided May 21, 2018

**Before**

JOEL M. FLAUM, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

No. 17-3345

| | |
|---|---|
| SHANE T. ROBBINS, | Appeal from the United States District |
| *Plaintiff-Appellant*, | Court for the Eastern District of Wisconsin. |
| | |
| *v.* | No. 16-CV-1528 |
| | |
| BRIAN FOSTER, et al., | Lynn Adelman, |
| *Defendants-Appellees*. | *Judge*. |

## O R D E R

Shane Robbins, an inmate at Waupun Correctional Institution, mail-ordered a gynecology study guide, which prison officials confiscated before it reached him. Robbins claims that those officials violated the First Amendment by withholding his book. The district court entered summary judgment for the defendants. Because the

---

* We have agreed to decide this case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

book contains images detrimental to prison security and Robbins's rehabilitation, and alternative textbooks are available, we affirm the judgment.

Robbins was convicted of several counts of child enticement and sexually assaulting two minor girls. He ordered the *Williams Gynecology Study Guide*, he says, to "educate [him]self on female sex organs" to assist his litigation of a postconviction petition. The book contains images of uncovered female breasts and genitalia and at least "one full-length photograph of a naked prepubescent girl, and several images of girls' genitals," so prison officials confiscated it. They told Robbins that the book was "injurious" contraband because, under Department of Corrections policy, it included "pornography" and was inconsistent with or threatened prison security and inmate safety. *See* WIS. ADMIN. CODE DOC § 309.04(4)(c)(8). Robbins unsuccessfully grieved and then appealed that decision.

Robbins then claimed under 42 U.S.C. § 1983 that prohibiting the *Williams* guide violated his First Amendment rights. The judge entered summary judgment in the officials' favor primarily based on affidavits by the prison's psychologist, security director, and librarian. Robbins, the judge determined, had not countered the evidence that the *Williams* guide might impede the rehabilitation of Robbins and other inmates or that it likely would cause fights or theft. Therefore, the judge concluded, the officials adequately had justified their decision to prohibit the book as "reasonably related to legitimate penological interests," *Turner v. Safley*, 482 U.S. 78, 89 (1987), and that Robbins had not overcome the presumption that the officials had "acted within their 'broad discretion,'" *Shaw v. Murphy*, 532 U.S. 223, 232 (2001) (quoting *Thornburgh v. Abbott*, 490 U.S. 401, 713 (1989)). And there was no effective alternative to prohibiting the book, the judge said, because there were too many pictures to redact and Department policy bars officials from removing disallowed pages, *see* WISC. DIV. OF ADULT INST. POLICY § 309.20.03(I)(C)(5)(b).

We review the grant of summary judgment de novo. *See Jackson v. Frank*, 509 F.3d 389, 391 (7th Cir. 2007). Although the First Amendment protects an inmate's access to reading material, prisons may have "valid penological reasons" for restricting certain books. *Munson v. Gaetz*, 673 F.3d 630, 633 (7th Cir. 2012); *see also King v. Fed. Bureau of Prisons*, 415 F.3d 634, 638–39 (7th Cir. 2005) (observing prison might reasonably bar book that encourages recidivism). We consider four factors to determine whether such a restriction is reasonably related to penological interests: "(1) the validity and rationality of the connection between a government objective and the restriction; (2) whether the prison leaves open 'alternative means of exercising' the restricted right; (3) the restriction's bearing on the guards, other inmates, and the allocation of prison

resources; and (4) the existence of alternatives suggesting that the prison exaggerates its concerns." *Munson*, 673 F.3d at 633 (quoting *Turner*, 482 U.S. at 89–91). It is Robbins's burden to show that the prison's regulation is unreasonable. *Jackson*, 509 F.3d at 391.

As to the first factor, the officials' decision to prohibit the *Williams* guide is legitimately connected to their interest in promoting Robbins's rehabilitation and maintaining prison security. *See* WIS. ADMIN. CODE DOC § § 309.04(4)(c)(8)(c). The prison psychologist explained that Robbins still is waiting for sex-offender treatment and that, based on his specific offense history, "unfettered access to the book" and its images "could potentially feed his offense-related sexual fantasies and encourage deviant sexual behavior." Robbins responds by questioning the officials' interest in restricting nude images, citing a psychologist's statement in an unrelated case that suppressing all "sexually oriented materials does not mean that sex offenders will not have deviant urges." *See Waterman v. Verniero*, 12 F.Supp.2d 364, 371 (D. N.J. 1998), *reversed by Waterman v. Farmer*, 183 F.3d 208 (3d Cir. 1999). But this general observation is not evidence, nor does it rebut the psychologist's specific finding in this case that the images of children in the *Williams* guide will impede Robbins's rehabilitation. *See* Fed. R. Civ. P. 56(c)(1); *Carroll v. Lynch*, 698 F.3d 561, 566 (7th Cir. 2012) (no genuine dispute of material fact where opposing party offered "no evidence of specific facts contradicting or undermining" defendants' evidence). The assessment, therefore, is undisputed.

The prison's interest in promoting a safe environment also supports prohibiting the *Williams* guide. The security director observed that the book likely would cause "theft, bartering, strong-arming, and fights" because of its images. Robbins's (dubious) assertion that that he "has never heard of such of thing" is not evidence and is irrelevant; the security risk can exist without him knowing about it. *See Thornburgh*, 490 U.S. at 412–13 (noting that publications intended for a general audience "reasonably may be expected to circulate among prisoners" and potentially cause disruption). Further, Robbins presents no other opposing evidence. Indeed his assertion that "hard-core" pornography is "very easy" to obtain in the prison "at a very low price" only underlines the officials' concern that there is a market for illicit images among inmates and explains their desire to keep images from the *Williams* guide from also circulating. *See Payton v. Cannon*, 806 F.3d 1109, 1110 (7th Cir. 2015) (inmate must provide evidence opposing prison's security concerns). Robbins also argues that the images are not "pornography." But the officials now disclaim that designation and rely solely on the images' effect on rehabilitation and security.

With regard to the second factor, Robbins has alternative means of exercising his rights. The prison librarian attested that the library contains anatomy textbooks with sections on female reproductive organs, and Robbins could order books that do not include prohibited images—which he does not contest, though he does not want to pay for them. He also does not explain his protestation that he needs more detailed information about female genitalia than an "anatomy" textbook can provide. Nor does he answer the regulation that restricts the prison from redacting the "disallowed content" from contraband publications, foreclosing that alternative measure. The third factor—the restriction's effect on other inmates, guards, and resources—also weighs in the officials' favor. The prison psychologist attested that disseminating these photos jeopardizes the rehabilitation of other prisoners as well, and Robbins does not dispute that there are no practicable means of redacting the book. And theft, fighting, or other disruptions resulting from Robbins' possession of the book would divert resources, including guards' time and attention, from other prison security matters. As for the fourth factor—whether the existence of alternatives undermines the officials' concern about the *Williams* guide—Robbins submitted no evidence that the prison's anatomy textbooks contain the same types of images that he is barred from possessing.

Accordingly, we AFFIRM summary judgment for the defendants.