**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted May 11, 2018[*]
Decided May 22, 2018

**Before**

DIANE P. WOOD, *Chief Judge*

DANIEL A. MANION, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

No. 17-2867

| | |
|---|---|
| JAMES A. TANKSLEY,<br>    *Plaintiff-Appellant*, | Appeal from the United States District<br>Court for the Western District of Wisconsin. |
| *v.* | No. 15-cv-126-jdp |
| JON E. LITSCHER, et al.,<br>    *Defendants-Appellees*. | James D. Peterson,<br>*Chief Judge*. |

**O R D E R**

James Tanksley, an inmate at Waupun Correctional Institution convicted of sexually assaulting a nine-year-old boy, is a practitioner of the Hermetic Order of the Golden Dawn—an occult religion recognized by the prison. He says that a particular set of tarot cards, the Initiatory Tarot Deck of the Golden Dawn, is essential to his religious practice. The cards contain drawings of various scenes that include nude women and boys. He submitted two requests for the deck, but prison officials denied them. Seeking a court order that the prison allow him to use the cards, Tanksley sued the Wisconsin

---

[*] We have agreed to decide this case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

Department of Corrections, its secretary, and the prison's warden under the Religious Land Use and Institutionalized Persons Act of 2000. Under the Act, if an inmate shows that an institutional policy substantially burdens his religious exercise, then that policy may not be applied unless the institution shows that the policy is the least restrictive means for advancing a compelling state interest. 42 U.S.C.A. § 2000cc-1; *Holt v. Hobbs*, 135 S. Ct. 853, 863 (2015). The district judge entered summary judgment for the defendants. Because the undisputed record shows that prohibiting Tanksley's access to the cards is necessary to advance the prison's compelling interest in his rehabilitation, we affirm the judgment.

The Initiatory Tarot Deck contains 78 cards. Eleven show women's breasts, nipples, and buttocks; one card, for example, entitled "The Lovers," depicts a nude woman bound in chains as she watches an armored man in the clouds raise a sword to a sea monster. Two cards show naked, prepubescent boys: "El Loco" shows a nude boy sitting outside with his legs spread and genitalia displayed, reaching for a flower as a wolf lurks behind him, and "The Sun" shows two naked children, one of whom has visible male genitalia, holding hands and splashing in a puddle.

Tanksley submitted a request for the Initiatory Deck in 2011. Officials denied his request because the deck has "inappropriate nude images." Officials denied his second request two years later. He then filed this suit.

During discovery the defendants offered a declaration from Dr. Jonathan Dickey, a psychologist for the Wisconsin Department of Corrections and a specialist in sex-offender treatment. Based on his knowledge, experience, and his review of Tanksley's records, Dr. Dickey said that images like those on the cards "tend[] to feed offense-related sexual fantasies and reinforce offense-supportive beliefs and deviant sexual behaviors." He opined that access to the Initiatory Deck would be "counter-therapeutic" and "detrimental" to Tanksley's rehabilitation and possibly increase his risk of re-offending. Dr. Dickey also opined that, although normal adults might be able to view the images without ill effects, Tanksley would be harmed because the images in the deck tend to encourage rather than discourage the deviant behavior that led to Tanksley's incarceration.

The defendants also submitted a declaration from Waupun's security director, stating that the tarot cards would pose a security risk if they were available in the prison. The director explained that pornographic content is not permitted in the prison and that the cards, bearing images of nude women and children, would be valuable commodities. "Having [unique items] in the institution," he continued, "tends to lead to theft, bartering, strong-arming, inmate exploitation, violence, and fights."

For his part, Tanksley submitted pictures and drawings of nude women and children that he photocopied from the art and medical books in the prison library.

The defendants moved for summary judgment on grounds that Tanksley could not succeed under the Act, given the evidence that denying him access to the cards was necessary to advance the state's compelling interests in his rehabilitation and prison security. *See Cutter v. Wilkinson*, 544 U.S. 709, 725 n. 13 (2005) (prison security is compelling state interest); *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987) (rehabilitation listed among "valid penological objectives").

The district judge entered summary judgment for the defendants. The judge determined that denying Tanksley the cards substantially burdens his religious exercise. But the judge accepted Dr. Dickey's opinion that the cards would impede Tanksley's rehabilitation, and so prohibiting them altogether was necessary. The judge also concluded that the defendants had shown that the cards posed a security risk. Other depictions of nudity might be accessible at the institution, he explained, but the images in the Initiatory Deck had a level of "erotic realism" not otherwise available.

On appeal Tanksley asserts generally that banning the deck is not necessary to advance the prison's interests—either in his rehabilitation or in security. The parties do not dispute for the purposes of summary judgment that the ban on the cards substantially burdens Tanksley's religious practice, so the burden shifts to the defendants to show that the ban was necessary to further a compelling governmental interest. *Holt*, 135 S. Ct. at 863.

The defendants have shown that the prison's ban on the cards was necessary to advance the interest in Tanksley's rehabilitation. The defendants rely on Dr. Dickey's statement—rooted in his knowledge, extensive experience, and review of Tanksley's record—that the images on the cards would hinder Tanksley's rehabilitation because nude images of the sort in the deck encourage offense-related fantasies and beliefs. Tanksley responds that the pictures will not inhibit his rehabilitation because other pictures of naked children can be viewed in the prison's library books. But the library images are not lewd or erotic like the drawings on the cards. And Tanksley's view of which images will obstruct his own rehabilitation is hardly objective. *See Borzych v. Frank*, 439 F.3d 388, 391 (7th Cir. 2006) (inmate's opinion on security not objective). He provided no other evidence to counter the prison psychologist's opinion that the cards would be counter-therapeutic to his rehabilitation, and thus summary judgment was properly granted. *See Payton v. Cannon*, 806 F.3d 1109, 1110 (7th Cir. 2015) (affirming summary judgment for prison where inmate did not present evidence to rebut prison official's opinion on security matter). Because the prison's ban on the cards is necessary

to support Tanksley's rehabilitation, the ban is permissible under the Act, and we need not consider whether the prison's security interest also justifies it.

Finally, Tanksley also claimed that he had a right to the cards under the First Amendment. But the Act provides greater protections than the First Amendment, so the judge properly entered summary judgment for the defendants on the constitutional claim, too. *See Schlemm v. Wall*, 784 F.3d 362, 363 (7th Cir. 2015).

AFFIRMED