**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted July 26, 2021[*]
Decided July 27, 2021

**Before**

MICHAEL S. KANNE, *Circuit Judge*

MICHAEL Y. SCUDDER, *Circuit Judge*

AMY J. ST. EVE, *Circuit Judge*

No. 20-3314

| | |
|---|---|
| DUSTIN TROWBRIDGE,<br>    *Plaintiff-Appellant*, | Appeal from the United States District Court for the Southern District of Indiana, Terre Haute Division. |
| *v.* | No. 2:19-cv-00014-JMS-MJD |
| INDIANA DEPARTMENT OF CORRECTION, *et al.*,<br>    *Defendants-Appellees*. | Jane Magnus-Stinson,<br>*Judge*. |

**O R D E R**

The Indiana Department of Correction bars prisoners from possessing most materials depicting nudity. Dustin Trowbridge, a Wabash Valley inmate whose fiancée sent him an intimate photo intercepted by prison staff, challenged this policy under the First Amendment. He lost at summary judgment. Because a reasonable factfinder could not deem the policy irrational on this record, we affirm.

---

[*] We have agreed to decide this case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

Trowbridge's fiancée emailed him a photo of her pubic area in partly see-through underwear. But Department policy restricts prisoners from possessing, among other things, "personal photographs" of exposed "genitalia." IND. DEP'T OF CORR., MANUAL OF POL'YS & PROCS., No. 02-01-103 § (XIX)(G) (Sept. 1, 2015). Citing this policy, a mailroom supervisor deleted the email.

After grieving this dispute administratively, Trowbridge sued the Department, the mailroom supervisor, and several prison officials to whom he had complained about the matter. *See* 42 U.S.C. § 1983. Claims for injunctive relief and damages against some of these defendants survived screening. 28 U.S.C. § 1915A. In a scheduling order, the district court outlined witness disclosure deadlines and explained the procedure for moving to compel discovery responses. *See* FED. R. CIV. P. 37(a)(1).

In written discovery requests, Trowbridge sought (among other things) data about rates of violence and harassment in Indiana prisons before and after the policy was enacted. Further, Trowbridge asked for the names—and motivations—of the policy's drafters, plus a description of the manner in which policies are reviewed and renewed. Yet the defendants asserted that this information was mostly unavailable or would be unduly burdensome to gather. The policy was "reviewed annually and updated if necessary," they conceded, though they provided no details.

One of these discovery responses was signed by Andy Dunigan, the Department's Director of Policy and Accreditation. Although Dunigan was not previously listed in the defendants' initial disclosures, the disclosures contained a catch-all statement that potential witnesses included "[i]ndividuals listed or identified in any discovery responses." Trowbridge did not move to compel further responses.

At the close of discovery, the defendants moved for summary judgment, arguing that the policy was rationally related to a legitimate interest in protecting staff from sexual harassment by inmates. In support they cited a declaration by Dunigan, who explained that "inmate access to materials depicting nudity would create a hostile work environment for female custody and administrative staff"; further, he said, female staff at Indiana prisons "are more often objectified and harassed by the inmate population when inmates are allowed to possess printed materials depicting nudity."

Trowbridge countered with two scholarly articles that, he says, undermine this rationale. Both are cited in our opinion in *Payton v. Cannon,* 806 F.3d 1109, 1110 (7th Cir. 2015), where we upheld a similar policy from Illinois. The first article voices doubts about some traditional rationales for explicit-photo bans, such as fostering prisoner

rehabilitation. Corey D. Burton & Richard Tewksbury, *Policies on Sexually Explicit Materials in State Prisons,* 24(2) CRIM. J. POL'Y REV. 222 (2011). The authors characterize the data as "mixed" and concede that officials "may still have a legitimate penological interest" in these regulations. *Id.* at 222, 230. The second article denies a causal link between pornography and violent crime in society. Christopher J. Ferguson & Richard D. Hartley, *The Pleasure is Momentary … the Expense Damnable? The Influence of Pornography on Rape and Sexual Assault,* 14 AGGRESSION & VIOLENT BEHAV. 323 (2009).

In his response, Trowbridge also sought to strike Dunigan's declaration because Dunigan was not named in the initial witness disclosures. But, though Trowbridge criticized the defendants' discovery responses, he did not ask to reopen discovery or defer ruling on summary judgment. *See* FED. R. CIV. P. 56(d).

The district court entered summary judgment for the defendants, albeit without addressing Trowbridge's request to strike Dunigan's declaration. Instead, relying on that declaration and our decision in *Payton*, the court found no material factual dispute about the policy's rational link to legitimate interests. Further, Trowbridge and his fiancée still could communicate intimate thoughts through written text. IND. DEP'T OF CORR., MANUAL OF POL'YS & PROCS., No. 02-01-103 § (XIX)(H) (exempting written text from ban on explicit material); *see generally Turner v. Safley,* 482 U.S. 78, 89–90 (1987) (listing factors for evaluating prison rules that impinge on constitutional rights).

On appeal, Trowbridge presses three arguments. First, he maintains that the district court should have disregarded Dunigan's declaration because Dunigan was not named in the defendants' initial disclosures. But, although the district court should have addressed this objection when Trowbridge raised it, any error was harmless. *See* FED. R. CIV. P. 37(c)(1); *David v. Caterpillar, Inc.,* 324 F.3d 851, 857 (7th Cir. 2003). The defendants' disclosures said that anyone named in discovery responses was a potential witness. Dunigan, in turn, signed one of those discovery responses, listing his Department title. Despite knowing this, Trowbridge sought no further discovery from Dunigan. So, even if we assume a violation of the court's scheduling order, there is no reason to infer that a clearer disclosure would have yielded a different summary-judgment record, or that the district court would have ruled to the contrary.

Second, Trowbridge contends that the scholarly articles he cited at summary judgment create a factual dispute about the policy's rationality. But the Burton and Tewksbury piece does no more than explain that further research is needed to fully understand the effects of regulations such as the one Trowbridge challenges. And it does not address inmate harassment of staff. The Ferguson and Hartley article,

meanwhile, contests the link between pornography and violence in society as a whole—but this does not address the narrower problem of non-violent harassment in prisons. And although, as Trowbridge notes, we cited these articles favorably in *Payton*, 806 F.3d at 1111, we did not say they were proof of an irrational policy. (Indeed, Payton lost.) Instead, we said they invited future social-science research. *Id*. These articles, on their own, would not permit reasonable factfinders to deem the policy here irrational.

Third, Trowbridge argues that prison officials must justify their policies with data, not broad assertions about inmate behavior. But at summary judgment we "must distinguish between inferences related to disputed facts and those relating to disputed matters of professional judgment." *Singer v. Raemisch*, 593 F.3d 529, 534 (7th Cir. 2010) (citing *Beard v. Banks*, 548 U.S. 521, 530 (2006) (plur.)). Dunigan's statements, although not rooted in quantitative data, reflect the kinds of professional judgment about inmate behavior and prison safety to which federal courts routinely defer. *See, e.g., Payton*, 806 F.3d at 1110; *Trapnell v. Riggsby*, 622 F.2d 290, 293 (7th Cir. 1980); *see also Giano v. Senkowski*, 54 F.3d 1050, 1054 (2d Cir. 1995) (collecting cases). The burden was "not on the State to prove the validity of prison regulations but on [Trowbridge] to disprove it." *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003). Where, as here, no reliable evidence contradicts plausible reasons advanced by prison authorities, the defendants are entitled to summary judgment. *Payton*, 806 F.3d at 1110.

AFFIRMED